UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY BELDEN,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                     Case No. 1:10-CV-492

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Claimant's [1] claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

---

[1] Plaintiff is the personal representative of Claimant, Mindy Ogg, who passed away after the decision presently being challenged was issued.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Claimant was 27 years of age at the time of the ALJ's decision.  (Tr. 17, 56).  She completed the ninth grade and worked previously as a bagger, cashier, store clerk, fast food worker, assembler, and machine operator.  (Tr. 16, 98-99).

Claimant applied for benefits on January 31, 2006, alleging that she had been disabled since June 19, 2005, because she was "emotionally unstable" and "can't deal with other people."  (Tr. 56-58, 97).  Claimant's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 18-55).  On September 9, 2008, Claimant appeared before ALJ B. Lloyd Blair, with testimony being offered by Claimant and vocational expert, Sandra Steele.  (Tr. 310-36).  In a written decision dated September 29, 2008, the ALJ determined that Claimant was not disabled.  (Tr. 10-17).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 2-5).  Claimant subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Claimant's insured status expired on March 31, 2009.  (Tr. 10).  To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Claimant must establish that she became disabled prior to the expiration of her insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On February 16, 2006, Claimant completed a questionnaire regarding her activities. (Tr. 80-87). Claimant reported that she cares for her daughter, washes laundry, prepares meals, irons clothes, dusts, mops, vacuums, cares for her pets, helps her daughter with her homework. (Tr. 80-83). Claimant also reported that she bowls, swims, and plays bingo. (Tr. 84).

On July 6, 2006, Claimant was examined by Carol Lehmann, M.A., L.L.P. (Tr. 229-34). Claimant asserted that she was "disabled by ADHD and bipolar." (Tr. 229). Claimant reported that she gets "irritated really easy" with people. (Tr. 230). Claimant reported that she enjoys listening to music, reading, watching television, and playing board games with her daughter. (Tr. 231). Claimant reported that she washes laundry, prepares meals, goes swimming, attends garage sales, and takes her daughter to the library. (Tr. 231). The results of a mental status examination were unremarkable, although the examiner noted that Claimant "seemed to be emphasizing if not exaggerating her problems." (Tr. 231-32). Claimant brought her medications to the examination, but the examiner reported that Claimant "does not seem to have been taking them regularly." (Tr. 229). Claimant was diagnosed with (1) alcohol abuse, (2) cannabis abuse, and (3) mood disorder, not otherwise specified. (Tr. 234). Claimant's GAF score was rated as 53.[2] (Tr. 234).

On July 21, 2006, Jerry Csokasy, Ph.D. completed a Psychiatric Review Technique form regarding Claimant's mental limitations. (Tr. 209-22). Determining that Claimant suffered from bi-polar disorder and substance abuse/cannabis abuse, the doctor concluded that Claimant satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.09 (Substance

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Addiction Disorders) of the Listing of Impairments. (Tr. 210-18). The doctor determined, however, that Claimant failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 219). Specifically, the doctor concluded that Claimant experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 219).

Dr. Csokasy also completed a Mental Residual Functional Capacity Assessment form regarding Claimant's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 223-25). Claimant's abilities were characterized as "moderately limited" in four categories. (Tr. 223-24). With respect to the remaining 16 categories, however, the doctor reported that Claimant was "not significantly limited." (Tr. 223-24). Dr. Csokasy concluded that Claimant "is capable of performing simple routine work on a sustained basis." (Tr. 225).

On October 3, 2006, Claimant began treating with Psychological Consultants of Michigan, P.C. (Tr. 178-80). Between October 17, 2006, and February 22, 2007, Claimant failed to attend six scheduled appointments. (Tr. 169-77). On September 6, 2007, Claimant was discharged from treatment because she "did not follow through." (Tr. 178-79). At the time of her discharge, Claimant was diagnosed with depression and her GAF score was rated as 61.[3] (Tr. 178). Claimant's case manager recommended to Claimant that she "find and maintain job." (Tr. 180).

On May 23, 2008, Claimant met with Ann Schipper, L.L.P.C. (Tr. 195-204). Claimant reported that she "just got out of jail and they think I am bipolar." (Tr. 195). Claimant

---

[3] A GAF score of 61 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

5

reported that she "can't stay focused" and "lashes out at her daughter and can't control that." (Tr. 195). Claimant noted, however, that "her racing thoughts have been helped by [her] medication." (Tr. 203). Claimant reported that she "likes to write poems and to listen to music" and "does ok socially and has 2 close friends." (Tr. 199). With respect to her work history, Claimant reported that she "had to quit" her last job "since she went to jail." (Tr. 199). Claimant further reported that she "has never been fired," but instead "gets bored on the job and will quit." (Tr. 199). The results of a mental status examination were unremarkable. (Tr. 200-02). Claimant was diagnosed with attention-deficit/hyperactivity disorder and bi-polar disorder. (Tr. 202). Her GAF score was rated as 51. (Tr. 203).

On August 26, 2008, Claimant participated in a consultive examination conducted by Richard King. Ed.D. (Tr. 108-13). Claimant reported that she "get[s] distracted real easily" and "still [has] some problems with racing thoughts." (Tr. 109). Claimant reported that she "has not had any history of legal difficulties for any reason" and "has not had any history of alcohol related driving offenses or any other legal problems related to alcohol use." (Tr. 109).

Claimant participated in intelligence testing, the results of which revealed that she possessed a verbal IQ of 80, a performance IQ of 78, and a full-scale IQ of 77. (Tr. 110). Dr. King reported that this placed Claimant in the "upper limits of the borderline range of intelligence." (Tr. 110). The doctor observed that Claimant was presently participating in counseling and that her "medication does appear to be beneficial." (Tr. 111). Dr. King diagnosed Claimant with attention deficit/hyperactivity disorder and bipolar disorder. (Tr. 112). Claimant's GAF score was rated as 52. (Tr. 112).

Dr. King also completed a Mental Residual Functional Capacity Assessment form regarding Claimant's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 114-15). Claimant's abilities were characterized as "markedly limited" in six categories and "moderately limited" in twelve categories. (Tr. 114-15). With respect to the remaining two categories, the doctor reported that Claimant was "not significantly limited." (Tr. 114-15).

Dr. King concluded that "[w]hile [Claimant's] intellectual abilities do fall in the range of simple competitive employment her emotional dynamics will be significant compromising factors as it relates to potential for employment." (Tr. 112). The doctor further concluded that "[w]hile [Claimant] may be able to obtain employment, her capability for maintaining employment for other than the very shortest periods of time is considered to be significantly limited." (Tr. 112).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Claimant suffers from (1) attention deficit hyperactivity disorder, (2) depression, and (3) a history of alcohol abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 12-14). The ALJ concluded that Claimant, despite her impairments, was able to perform her past relevant work as a bagger, cashier, store clerk, and fast food worker. (Tr. 14-17). Accordingly, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Claimant's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Claimant bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Claimant's residual functional capacity, the ALJ determined that Claimant retained the capacity to perform medium work[5] subject to the following limitations: (1) the work must be simple and unskilled; (2) the work must have an SVP rating[6] of one or two; (3) the work must allow Claimant "to be absent, tardy, or leave work early one time per month;" and (4) Claimant "cannot work a job that requires production quotas mandating a specific number of pieces per hour or with a down line co-worker depending on claimant for productivity." (Tr. 14, 334). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Claimant's RFC is supported by substantial evidence.

A vocational expert testified that if Claimant was limited to the extent recognized by the ALJ's RFC determination, she would be able to perform her past relevant work as a bagger, cashier, store clerk, and fast food worker. (Tr. 334). Relying on this testimony, the ALJ determined that Plaintiff was not disabled.

---

[5] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

[6] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on March 1, 2011). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only." A job with an SVP rating of two corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month." *Id.*

          a.       The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. King examined Claimant on August 26, 2008, after which he expressed the opinion that Claimant's "emotional dynamics will be significant compromising factors as it relates to potential for employment" and "[w]hile [Claimant] may be able to obtain employment, her capability for maintaining employment for other than the very shortest periods of time is considered to be significantly limited." Dr. King further concluded that Plaintiff was "markedly" or "moderately" limited in numerous areas of functioning. The ALJ afforded minimal weight to Dr. King's opinions. Claimant asserts that the ALJ failed to properly evaluate Dr. King's opinions. With respect to Dr. King's opinion, the ALJ concluded:

> Claimant's attorney eventually sent her for an August 2008 consultive examination with psychologist Richard L. King, Ed.D. Dr. King provided a mental residual functional capacity assessment that suggested claimant was moderately to markedly limited in almost all areas of functioning. This assessment is not supported by the record evidence and is contrary to other opinions of record that are more consistent with finding no more than moderate limitations. The opinion of Dr. King is given less weight considering the lack of supporting evidence in favor of his assessment. Dr. King was never a treating physician and only provided a one-time assessment. Psychologist Csokasy's opinion is given greater weight due to its consistency with the overall record and the doctor's knowledge in Social Security Disability rules and regulations. It is also largely consistent with the opinion of Dr. Lehman. The above adopted residual functional capacity reflects the maximum amount of impairment that can be reasonably assessed after examining the record as a whole.

(Tr. 16).

First, as the ALJ correctly observed, because Dr. King examined Claimant on only one occasion his opinion is entitled to no special deference. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006); *Barker v. Shalala*, 40 F.3d 789, 794 (6th

Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989). Moreover, as the ALJ correctly observed, Dr. King's opinion is contradicted by the evidence of record, including Claimant's own statements about her activities and work history. The ALJ is tasked with assessing and weighing the evidence before him. While Claimant would have preferred that the ALJ afford greater weight to Dr. King's opinion, the ALJ's assessment of Dr. King's opinion is supported by substantial evidence.

        b.      The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 14). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

11

> established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Claimant suffered from severe impairments which limited her ability to engage in gainful employment. As the ALJ concluded, however, Claimant's subjective allegations of limitations in her ability to function are credible only to the extent that such are consistent with the ALJ's RFC determination. As the ALJ observed:

> There is a long history of substance abuse and arrests with intermittent periods of minimal longitudinal treatment. . .Almost all of claimant's early psychological therapy was short-lived and very limited in duration because claimant would unilaterally decide to stop attending therapy. . .Additionally, claimant has a very poor work history that is directly attributable to her own malaise toward work. She readily testified, as well as previously mentioned to other physicians, that she worked at least 28 jobs but left them because she either became 'bored' or had 'clashes' with bosses. She did not lose her most recent factory worker position due to impairment; rather she lost it because she was sent to jail.
>
> Claimant also testified that she was currently receiving unemployment benefits. The undersigned takes administrative notice that under applicable Federal and State law, an individual cannot collect unemployment compensation unless she not only alleges that she is ready, able, and willing to work, but in addition, she must also document that she is actively searching for work. This presents a conflict of statements that only further detracts from claimant's credibility. On the one hand, she is alleging an inability to work due to disability, while on the other she is alleging she is ready, able and willing to work. This conundrum inevitably leads to the conclusion that claimant is not being entirely forthright and honest.
>
> Claimant's alleged impairments are simply not as drastic as she purports. Claimant has no difficulty independently caring for her eight year daughter and is able to clean the apartment, launder clothes, prepare and cook food, take her daughter swimming, frequent garage sales, and go to the library. Consultive psychological examiner Carol Lehmann specifically noted in July 2006 that claimant appeared to exaggerate her problems. Even as recently as May 2008 claimant professed that her medication was effective and resulted in decreased symptomology. It is apparent throughout the medical record that when claimant takes proper medications and maintains a prescribed therapy and counseling regimen her condition is adequately controlled.

(Tr. 15).

Claimant concedes that she was "sporadically compliant with treatment, and she had a poor work and academic record." Claimant argues, however, that such is not attributable to "an exaggeration of symptoms and lack of credibility," but rather that she "had serious difficulty with concentration and focus" as Dr. King concluded. As discussed above, Dr. King's opinion is not supported by the record. On the other hand, the ALJ's assessment of Plaintiff's credibility is amply supported by the evidence of record.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  June 29, 2011                              /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge